# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jerry D. Stipe,** | CASE NO. CV 06-1006-GHK |
| Petitioner, | |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| **Arnold Schwarzenegger, et al.,** | |
| Respondents. | |

This matter[1] is before the Court on Petitioner Jerry D. Stipe's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). On May 8, 2006, Petitioner filed the Petition alleging that he was deprived of his due process liberty interest when the now Board of Parole Hearings ("Board") denied him parole on June 29, 2005. On August 4, 2006, Respondent Robert L. Ayers Jr. ("Respondent"), Acting Warden at San Quentin State Prison, filed an Answer. On August 21, 2006, Petitioner filed a Traverse. We have now considered the papers filed in support of and opposition to this Petition, and deem this matter appropriate for resolution without oral argument. L.R. 78-230(h). The parties are familiar with the facts in this case, so they will be repeated only as necessary.

---

[1] Although Petitioner named Governor Schwarzenegger in his Petition, the correct Respondent is Robert L. Ayers, Acting Warden at San Quentin state prison.

## I. Factual Background

In January 1984, Petitioner was found guilty of second degree murder. He is currently serving a sentence of seventeen years to life. Apparently, in 1983, Petitioner was working as a ranch hand with the victim, a man in his late sixties. One night, the two engaged in heavy drinking at a bar, got into an altercation, and the waitress threatened to call the police if they did not leave. Later that evening, Petitioner was arrested for driving under the influence. In the pickup truck he was driving, officers recovered three shotguns, two .22 rifles, and other personal effects. Once he was booked, Petitioner surrendered a turquoise ring and a medical alert medallion that belonged to the victim. An officer went to the victim's residence and found the victim dead on the floor of the garage. A dead rooster, two dead ducks, and two dead dogs were later found. On the floor of Petitioner's bedroom, as well as in other places around the house, were .22 caliber casings. The bedroom used by the victim, as well as that of the ranch owner, was ransacked. An autopsy revealed that the victim was assaulted and shot three times - once in the right front chest, once in the lower front chest, and once in the back. A ring had been removed recently from his finger.

At trial, Petitioner lied under oath and testified that he returned to the ranch that night, smoked marijuana, and drank some beers. He testified that when he awoke he was outside where he encountered the dead dogs. He also testified that as he returned to the residence he observed two bikers at the residence and that, fearing for his life, he removed the victim's money and drove off in the victim's pickup truck. After he was found guilty, Petitioner again denied the killing to the probation officer. In 1987, during counseling, he again denied the killing.

However, by at least 1992, and perhaps as early as 1988, Petitioner began accepting responsibility for the murder of the victim. But, until at least 1999, Petitioner purported to have had only a vague recollection of the events surrounding the murder. At the June 2005 parole hearing, however, Petitioner testified that he did shoot/kill the victim and shot up the house where he and the victim were staying. He testified that he yelled at the

victim after he shot him and that he then shot the victim twice more. He admitted killing the animals, and taking the money and the truck. He also testified that his actions were the result of his drinking problems which were in turn the result of his infant son's drowning death at the hands of his ex-wife's boyfriend.

The Board found Petitioner unsuitable for parole, stating that he would pose an unreasonable risk of danger to society and would be a threat to public safety if released from prison. Moreover, the Board found that Petitioner's motive for the crime was inexplicable or trivial in relation to the offense. The Board considered the district attorney's opposition to parole and gave weight to the fact that Petitioner had failed to participate in Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA"), despite the role alcohol played in the offense.

The Board expressed its concern that Petitioner purported to not know why he committed the murder, that he continued to lie about it until at least 1988, and that he did not address those lies until he was confronted by the district attorney's office. It concluded that Petitioner needed additional therapy, self-help, and further programming.

Petitioner sought habeas relief in the state courts,t challenging the Board's denial of parole at the June 29, 2005 hearing.[2] The California Superior Court denied his petition and found, in a reasoned decision, "some evidence" supported the Board's determination that Petitioner would be an unreasonable risk to society if released. On February 2, 2006, the California Court of Appeal summarily denied the petition and on April 12, 2006, the California Supreme Court also denied the petition without comment. The Parties agree that the present Petition was brought before the expiration of the applicable statute of limitations.

## II. Petitioner's Liberty Interest In Parole and Our Standard of Review

Respondent argues that California prisoners do not have a constitutionally protected liberty interest in a parole date. Respondent is incorrect. The Ninth Circuit, interpreting

---

[2] That parole hearing was Petitioner's fifth parole consideration and denial.

3

California law, has held that California prisoners have a constitutionally protected liberty interest in a parole date which cannot be deprived without due process of law. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); see also Irons v. Carey, 505 F.3d 846, 850–51 (9th Cir. 2007). Petitioner's claim that the Board's denial of parole deprived him of due process is cognizable on this Petition.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we cannot grant this habeas petition unless we determine that the California Superior Court's decision[3] "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Sass, 461 F.3d at 1127.[4]

Respondent contends that use of the "some evidence" standard in the parole context is not clearly established by the Supreme Court for purposes of AEDPA. The Ninth Circuit has rejected this argument. Sass, 461 F.3d at 1128–29. In Superintendent, Mass. Corr. Inst., Walpole v. Hill, the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." 472 U.S. 445, 454 (1985) (internal citations omitted). Although the Supreme Court has not specifically identified what standard should be used in the parole context, it follows from Hill that due process must be satisfied and the "some evidence" standard is a minimal standard. To hold that less than the "some evidence" standard is required would violate clearly established federal law because it would mean that a state could interfere

---

[3] Under the "look-through" doctrine, "where there has been one reasoned statejudgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).

[4] The facts are not in dispute. The only question is whether the Superior Court's denial meets the deferential AEDPA standards.

4

with a liberty interest-that in parole-without support or in an otherwise arbitrary manner. Sass, 461 F.3d at 1128–29. Therefore, the some-evidence standard applies in parole denial hearings. Id.

III. Discussion

To determine whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [factfinder]," which in this case is the Board. Hill, 472 U.S. at 455–56. However, evidence underlying the Board's decision must have some indicia of reliability.[5] Jacsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Hodge v. Carey, 2007 WL 163247, at *7 (E.D. Cal. Jan. 18, 2007).

Petitioner contends that the Board's continuing reliance on unchanging factors, i.e., the nature of his offense and his pre-offense conduct, violates his due process rights. In Biggs v. Terhune and Sass, the Ninth Circuit addressed the effect of continued denial of parole based solely on unchanging factors such as the inmate's commitment offense. See Biggs, 334 F.3d 910, 917 (9th Cir. 2003); Sass, 461 F.3d at 1129. In Biggs, the court, in dicta, stated that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." 334 F.3d at 917.

This point was clarified in Irons v. Carey. In Irons, the district court granted a habeas petition challenging the parole board's fifth denial of parole where the petitioner had served sixteen years of a seventeen years to life sentence for second degree murder with a two-year enhancement for use of a firearm, and where all other factors indicated

---

[5] Reliability of the underlying evidence is not an issue because the facts (theunderlying conduct, Petitioner's more recent admissions of guilt, and his failure to complete AA and NA) are not in dispute.

5

suitability for parole; however, the Ninth Circuit reversed. 505 F.3d 846, 849, 854 (9th Cir. 2007). The Ninth Circuit stated:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Id. at 853-54. The court recognized, however, that at some point after an inmate has served his minimum sentence, the probative value of his commitment offense as an indicator of an unreasonable risk of danger to society recedes below the "some evidence" required by due process to support a denial of parole. Id. at 854.[6] Therefore, unchangeable factors cannot, at some point, be the sole justification for the denial of parole.

Here, although Petitioner has exceeded the minimum term, the Board's denial was not based solely on Petitioner's underlying offense or other unchangeable factors. Petitioner argues that the Board focused only on unchangeable factors in denying Petitioner parole. He is incorrect. As explained by the Superior Court, Petitioner denied his involvement in the murder until at least 1988, and his recollection as to the events were "hazy" until 1998, at the earliest. It was only recently that Petitioner began

---

[6] Petitioner cites *Hayward v. Marshall* as authority for why his Petition should be granted. *See* 512 F.3d 536 (9th Cir. 2008). However, the *Hayward* opinion was vacated and a rehearing *en banc* was granted. Therefore, *Hayward* cannot be cited as precedent. 527 F.3d 797, 797 (9th Cir. 2008).

6

remembering the specific details of the offense.  In fact, Petitioner still purports to not remember hitting the victim despite physical evidence that a beating occurred.  Furthermore, the Board emphasized that Petitioner never completed either AA or NA.  Therefore, although the Board also placed great emphasis on the inexplicable nature of Petitioner's offense, the Board's decision that Petitioner would be an unreasonable risk to society if released is supported by "some evidence," even discounting the nature of the offense and pre-offense conduct.  Petitioner's failure to complete AA or NA surely is sufficient support for the Board's decision that he continued to pose an unreasonable risk to the public inasmuch as Petitioner admitted that the offense was committed while he was intoxicated.

Because there is some reliable evidence to support the Board's decision, the state courts' decisions are not contrary to, or involve an unreasonable application of, clearly established federal law and are not based on an unreasonable determination of facts.[7]

---

[7] Petitioner also argues that the Board did not actually consider all the relevant factors, and that it instead went through the motions without any actual review of Petitioner's record.  After a careful review of Petitioner's parole hearing transcript, we disagree with Petitioner's assertion.  The Board spent a considerable amount of time reviewing Petitioner's record and giving Petitioner a chance to speak.  The Board commended Petitioner on his many accomplishments in prison and indicated that at some point the Board believed that Petitioner may very well be a successful candidate for parole.  Moreover, the Board considered the truly heartbreaking loss of Petitioner's son and the effect that loss had on Petitioner's life.  Although Petitioner disagrees with the outcome of his parole hearing, it would be an unfair characterization of the record to say that the Board simply glossed over the relevant factors without giving them due weight and consideration.

Petitioner also emphasizes that his mental health evaluation concluded that it did not "appear" that Petitioner would pose a danger if he were released to the community.  However, the evaluation also found that Petitioner would benefit from AA and NA, that Petitioner "has a tendency to respond in a fairly limited way to people and situations that are not to his liking," and that "[d]eveloping greater flexibility of thought and behavior would be beneficial to [Petitioner]." Evaluation at

7

## IV.  Conclusion

Accordingly, we **DENY** Petitioner's Petition for Writ of Habeas Corpus.  Petitioner also requests an evidentiary hearing on his claims.  Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999); *see also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005).  He must also "allege[ ] facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000).  Petitioner has not demonstrated that any additional facts need to be determined in order to resolve the claims raised in the instant petition.  Moreover, as we noted previously, the facts on which the Board relied are not disputed.  We have already determined that relief as to Petitioner's claims must be denied on the merits because the state courts' decisions were not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.  Accordingly, an evidentiary hearing is not warranted on Petitioner's claims, and his request for an evidentiary hearing is hereby **DENIED**.

**IT IS SO ORDERED**.

DATED: March 4 , 2009

_____
GEORGE H. KING

---

6.

Finally, to the extent that Petitioner asserts that he has undertaken other programs similar to AA and NA, this assertion, even if true, does not detract from the Board's decision that failure to participate in those recognized programs supported its finding of unsuitability for parole.  Petitioner is not privileged to unilaterally choose programs contrary to the Board's preference for AA and NA.

8

United States District Judge[8]

---

[8] United States District Judge for the Central District of California sitting by designation.